UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John K. Hulett, | Civ. File No. 04-1454 (PAM/RLE) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Brink's Home Security, Inc., | |
| Defendant. | |

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

**BACKGROUND**

Defendant Brink's Home Security, Inc. provides residential security alarm systems and monitoring services. It employs security sales consultants to sell its alarm systems. Plaintiff John Hulett worked for Brink's Home Security as a security sales consultant from August 2002 to May 2003. He now brings an age discrimination claim under the Age Discrimination in Employment Act ("ADEA").

**A.    Interview and Hiring Process**

As part of the screening process, Brink's Home Security requires its security sales consultant applicants to undergo at least one interview, a pre-employment drug screen, and a background check. During July and August 2002, Hulett underwent several interviews for a security sales consultant position. In addition, Hulett had to submit two urine samples for drug screening because the first sample leaked in transport and was declared defective. Hulett alleges that these were extraordinary requirements that resulted in a delay in the hiring process.

Nevertheless, it is undisputed that Brink's Home Security hired Hulett on August 20, 2002. Hulett was 49 years old when he was hired.

**B.      Performance Requirements of Security Sales Consultants**

Brink's Home Security requires its security sales consultants to close at least eighteen sales per month. Eight of those sales must be self-generated sales. In addition, the security sales consultants must close at least 50% of company-generated sales leads per month.

Hulett did not meet these performance requirements throughout his nine-month employment. For example, Hulett met the total sales requirement of closing eighteen sales per month in only January 2003. In addition, Hulett did not secure eight self-generated sales during any month of his employment.[1] Moreover, the number of self-generated sales Hulett achieved consistently trailed all other security sales consultants, ranking last or second to last for every month except March 2003.

From October 2002 to May 2003, Brink's Home Security provided each security sales consultant between eleven to thirty-five sales leads per month. Hulett met the close rate for company-generated leads during the first four months of his employment. However, he failed to achieve the close rate standard during the last four months of his employment. During that time, Brink's Home Security provided Hulett fewer company-generated sales leads than it provided to younger sales consultants.

Brink's Home Security uses a progressive disciplinary system for security sales

---

[1] The record indicates that sales consultants did not meet the self-generated sales goal most of the time. Indeed, only two of the seven security sales consultants employed during Hulett's tenure met their self-generated sales goals between October 2002 and May 2003.

consultants who chronically do not meet the performance standards. Initially, a sales manager provides the consultant with a Training Game Plan, which details what steps the consultant must take to improve performance. If the Training Game Plan is not successful, the next step is a Corrective Action Plan, which is then followed by termination.

**C.     Termination**

Brink's Home Security terminated Hulett on May 31, 2003. Although the record does not indicate whether Brink's Home Security hired someone to replace Hulett, it shows that Brink's Home Security hired seven individuals under the age of forty within six months of Hulett's termination. (Hulett Aff. Ex. 2.)

**DISCUSSION**

**A.     Standard of Review**

Summary judgment is proper when the evidence viewed in a light most favorable to the nonmoving party demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, only disputes of facts that might affect the outcome of the suit under the governing substantive law will preclude summary judgment. Id. The moving party bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to all inferences that may be reasonably drawn from the underlying facts in the record. Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 992-93 (8th Cir. 2003). However, the nonmoving party may not merely rest upon

allegations or denials in its pleadings — it must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 256; see also Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003) ("Evidence, not contentions, avoids summary judgment.").

Because employment discrimination cases often turn on inferences rather than direct evidence, the Court is particularly deferential to the party opposing summary judgment in employment discrimination cases. Peterson v. Scott County, 406 F.3d 515, 520 (8th Cir. 2005) (citations omitted).

**B.     The ADEA**

The ADEA prohibits an employer from discriminating against an employee because of the employee's age. See 29 U.S.C. § 623(a); Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1035 (8th Cir. 2005). The Eighth Circuit Court of Appeals recently elucidated the analytical framework applied to ADEA claims:

> A plaintiff may meet the ultimate burden of proving intentional discrimination either through evidence "showing a specific link between the alleged discriminatory animus and the challenged decision" and allowing the fact finder to conclude that this animus actually motivated the challenged decision, or through indirect evidence subject to McDonnell Douglas analysis. A plaintiff will preclude summary judgment by presenting sufficient evidence that unlawful discrimination was a motivating factor in the defendant's action even if the defendant has brought forward evidence of additional legitimate motives.

Peterson, 406 F.3d at 521.

**B.     Remarks as Direct Evidence of Age Discrimination**

Hulett relies on a document and comment as direct evidence of age discrimination. "Direct evidence is that which demonstrates a specific link between the challenged employment action and the alleged animus." Kells v. Sinclair Buick-GMC Truck, Inc., 210

4

F.3d 827, 835 (8th Cir. 2000). More specifically, direct evidence is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993) (quotation omitted). Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference. In differentiating between direct and indirect evidence of age discrimination, courts distinguish comments that demonstrate a discriminatory animus in the decisional process from stray remarks in the workplace, statements by non-decision makers, or statements by decision makers unrelated to the decisional process. Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1157 (8th Cir. 1999) (citation omitted).

First, Hulett relies on part of the Brink's Home Security Sales Management Guide, which refers to lack of production caused by the "senior sales syndrome." (Hulett Aff. Ex. 25.) The manual does not explain the specifics of the syndrome. However, the identified corrective actions suggest that the syndrome is associated with an individual who has been conducting sales presentations for a long time and has become complacent. For example, the corrective actions include reviewing training manuals and renewing training sessions. Thus, it appears that the "senior" aspect of it refers to length of tenure and not age. Moreover, there is no evidence that anyone ever referred to Hulett as having "senior sales syndrome" or that anyone relied on the "senior sales syndrome" in the decisional process that adversely affected Hulett's

5

employment. Thus, Hulett has failed to show a link between the alleged discriminatory animus and any challenged decision.

Second, Hulett alleges that the office manager referred to Hulett as an "old dog" once when Hulett was in the office. (Hulett Aff. ¶ 27.) However, the officer manager had no oversight responsibility for security sales consultants and did not participate in any decisions regarding Hulett's employment. (Sietsema Aff. ¶¶ 1-2.) Comments by a person who is not in a position to impose adverse employment consequences is not a violation of the ADEA. Hitt v. Harsco Corp., 356 F.3d 920, 925 (8th Cir. 2004). Thus, the isolated comment cannot support a finding of age discrimination. See Kohrt v. MidAmerican Energy Corp., 364 F.3d 894, 898 (8th Cir. 2004) (some causal relationship is necessary to show the significance of statements to the ultimate issue of intentional discrimination).

**C.   Indirect Evidence of Age Discrimination**

Because Hulett has not presented direct evidence of discrimination, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), applies. Peterson, 406 F.3d at 521. Under the McDonnell Douglas paradigm, a plaintiff must first establish a prima facie case of discrimination. Id. If the plaintiff does so, the burden shifts to the defendant to proffer a legitimate, non-discriminatory explanation for its conduct. Id. If the defendant meets this burden, the presumption of discrimination disappears, and the burden reverts to the plaintiff to establish that the defendant's proffered reason was a pretext for discrimination. Id. Thus, a plaintiff will avoid summary judgment if the evidence as a whole creates (1) a fact issue as to whether the employer's proferred reason is pretextual and (2) a reasonable inference that

age was a determinative factor in the adverse employment decision. Haas, 409 F.3d at 1035-36 (citations omitted); Kohrt, 364 F.3d at 898 (citation omitted). The plaintiff always bears the ultimate burden of proving that intentional age discrimination occurred. Peterson, 406 F.3d at 521.

    1.    Interview and Hiring

Although Brink's Home Security ultimately hired Hulett for a security sales position, Hulett argues that the fifteen day delay in the hiring process was discriminatory.

To establish a prima facie case of age discrimination under the ADEA in a failure to hire context, Hulett must show that (1) he was forty years old or older, (2) he was otherwise qualified for the position, (3) he was not hired, and (4) Brink's Home Security hired a younger person to fill the position. Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 856 (8th Cir. 2003). Because Brink's Home Security hired Hulett as a security sales consultant, he cannot establish the requisite third prong of the failure to hire prima facie case.

A delay in hiring arguably may be considered an adverse employment action. Nevertheless, the fifteen day delay in this case was inconsequential. Indeed, Hulett admits that he cannot offer any evidence that he was damaged by the delay. (Hunziker Aff. Ex. 3 at 74-77 (Hulett Dep.).) Moreover, although Hulett contends that younger individuals were treated differently, he offers no evidence to support his claim and simply assumes that age was a factor. Thus, Hulett has failed to show any age animus in the hiring process. See Haas, 409 F.3d at 1034 (nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor).

2.   Adverse Actions During Employment

Hulett alleges that he was denied company-generated sales leads, the opportunity to advertise, and attendance at sales meetings because of his age. He also alleges that Brink's Home Security unfairly imposed a corrective action plan on him because of his age.

To establish a prima facie case of age discrimination during employment, Hulett must show that he: (1) is forty years old or older, (2) was qualified to perform his position, (3) suffered an adverse employment action, and (4) was treated differently than younger employees. Breeding, 164 F.3d at 1156.

a.   Denial of Company-Generated Leads

Hulett contends that Brink's Home Security management unfairly allocated company-generated sales leads, and that he received less leads than younger sales consultants. Brink's Home Security admits that Hulett received less company-generated sales leads during the last four months of his employment, and therefore concedes that Hulett can establish a prima facie case on this claim. However, it justifies the disparity by explaining that it distributed company-generated sales leads to its sales force based on each consultant's sales performance. Thus, sales consultants who were meeting or coming closest to meeting sales quotas were given more company-generated leads than consultants who were lagging behind in meeting quotas.

In the last four months of his employment, Hulett's close rate for company-generated leads ranged from 29% to 42%, for an average rate of 37%. His six-month close rate was 43%, as compared to the branch rate of 52%. Although the leads may not have been divided

8

equally among all sales consultants, the evidence does not substantiate that the distribution was based on the age of the sales consultants. Indeed, the record shows that sales consultants under 40 years old also received fewer company-generated leads when their close rates were lower than other sales consultants and under the required 50% rate. Hulett does not dispute this and has not presented any further evidence to show that age was a motivating factor in the distribution of company-generated sales leads.

        b.    <u>Denial of Opportunity to Advertise</u>

Hulett maintains that Brink's Home Security wrongfully removed his name in a company advertisement. Hulett generated an advertisement for Brink's Home Security in a church bulletin and originally placed his name as the contact person. General Manager Lain Cains modified the advertisement to identify himself as the contact. Hulett maintains that Cains changed the advertisement so that Cains could give leads from the advertisement to younger sales consultants.

Brink's Home Security company policy requires that the general manager — and not sales consultants — be identified in all advertisements. Hulett neither disputes the existence of this policy nor presents evidence of any exception to the policy wherein a younger sales consultant was identified in an advertisement. He therefore is unable to show that the removal of his name in the advertisement was motivated by age animus.

        c.    <u>Sales Meetings</u>

Hulett claims that Brink's Home Security management changed a weekly sales meeting from Monday mornings to Tuesday evenings, when he was unable to attend because of a scheduling conflict. Brink's Home Security responds that the meeting time was changed because Monday mornings were very hectic for the staff since many sales were completed over the weekend and the security sales consultants were busy completing contracts and arranging for service on Monday mornings. When General Manager Cains implemented the change, he was unaware of Hulett's scheduling conflict. After learning of the conflict, Cains excused Hulett from the mandatory meetings and provided Hulett with all materials and information generated at the Tuesday evening meetings. Hulett does not dispute this. Moreover, he provides no evidence that he suffered adverse employment consequences because he did not attend the Tuesday evening meetings or that the change was motivated by his age.

      d.    <u>Tuition Reimbursement</u>

Hulett submitted a tuition reimbursement form to Human Resources, and claims that it was not processed. However, he presents no evidence that any other Brink's Home Security sales consultant received reimbursement for tuition. He therefore cannot show that he was treated differently than any other sales consultant or that the denial of reimbursement was motivated by his age.

      e.    <u>Corrective Action</u>

Hulett alleges that Brink's Home Security forced him to attend a Training Game Plan session in April 2003 and wrongfully completed a Corrective Action Plan in May 2003. Brink's Home Security maintains that these measures were necessary because Hulett failed to meet performance expectations.

Hulett maintains that several other security sales consultants did not meet the performance expectations yet never received corrective action. For example, he notes that Jack McCauley never reached the monthly goal of eight self-generated leads during his March 2002 to March 2003 employment. Rather, McCauley averaged 3.33 self-generated sales per month. Nonetheless, McCauley was never forced into a training program or pressured into a corrective action program. (Hulett Aff. ¶ 17.) Notably, however, McCauley was older than Hulett and thus a member of the class protected by the ADEA.

Moreover, Brink's Home Security presents evidence that other individuals under 40 years old — Jeff Steeno and Tony Skajewski – received Training Game Plans because of their failure to meet performance goals. Steeno generated only five sales and Skajewski had only

one in May 2003. Thereafter, both were put on corrective action plans. Notably, Steeno averaged eight self-generated sales per month for the six month period, and Skajewski averaged 6.5 self-generated sales for the six-month period.[2] During the same time, Hulett averaged only 2.1 self-generated sales per month, and had no self-generated sales in May 2003.

This evidence tends to demonstrate that Brink's Home Security applied its performance requirements without regard to age, and countervenes a finding that age motivated Hulett's receipt of a corrective action plan.

3.   Termination

Hulet alleges that he was terminated because of his age. Brink's Home Security maintains that he was terminated for failing to meet its performance expectations from February to May 2003.

To establish a prima facie case of age discrimination, Hulett must show that (1) he was at least 40 years old, (2) he was terminated, (3) he was meeting the reasonable expectations of Brink's Home Security when he was terminated, and (4) he was replaced by someone substantially younger. Haas, 409 F.3d at 1035 (citations omitted).

Hulett cannot establish a prima facie case because he fails to show that he was meeting the legitimate performance expectations of Brink's Home Security when he was terminated. See Erenberg v. Methodist Hosp., 357 F.3d 787, 793 (8th Cir. 2004) (summary judgment proper when employee knew she was not performing her duties in a way that the employer

---

[2] Moreover, Skajewski averaged nine self-generated sales and Steeno averaged eight self-generated sales over the previous two year period.

legitimately expected); Hitt, 356 F.3d at 924 (second prong of prima facie case requires plaintiff to show that "he was performing his job at a level that met his employer's legitimate expectations"); Calder v. TCI Cablevision of Mo., Inc., 298 F.3d 723, 729 (8th Cir. 2002) (same); Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (same); Richmond v. Bd. of Regents of Univ. of Minn., 957 F.2d 595, 598 (8th Cir. 1992) (employee's prima facie case failed because poor work performance showed that she was not qualified for her job).

Hulett presents evidence that he has been and is now a successful salesman in other jobs. Hulett therefore asserts that Brink's Home Security management undermined his performance, and essentially set him up for failure. However, Hulett presents no evidence refuting the evidence that he was not meeting the performance goals of Brink's Home Security. Although he has produced evidence of his attempts to obtain self-generated sales leads, Hulett does not present any evidence that he actually achieved a self-generated sale. Moreover, he does not dispute that he had the lowest rate of self-generated sales among all sales consultants. Finally, it is undisputed that Hulett did not meet any of the sales consultant performance requirements from February 2003 to May 2003.

Hulett also presents anecdotal evidence that other employees were terminated because of their age. However, he does not present any evidence to create a genuine issue of whether Brink's Home Security terminated him because of his age.

**CONCLUSION**

Plaintiff John Hulett has failed to present evidence sufficient to create a reasonable inference that age was a determinative factor in any adverse employment action he experienced during his employment with Brink's Home Security. Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Clerk Docket No. 60) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 15, 2005

s/ Paul A. Magnuson

Paul A. Magnuson
United States District Court Judge
